THE PEOPLE OF THE STATE OF NEW YORK, DEFEND-
ANTS IN ERROR, *v.* JOHN McGINTY AND JOHN KINSELLA,
PLAINTIFFS IN ERROR.

*Robbery — what force is required to constitute the offense*

Upon the trial of the plaintiff in error, McGinty, for robbery in the first degree,
    it appeared that on the evening of January sixth one Swallow entered a saloon
    kept by McGinty's wife, and while there took out his pocket-book to put some
    money in it ; that McGinty who stood at the end of the bar, knocked it out
    of his hand, and that one Kinsella, who stood behind the bar, picked it up.
    McGinty then seized Swallow by the shoulders, turned him around and put
    him out of the saloon and shut the door; that Swallow demanded his pocket-
    book, and was told by McGinty that he had better go away, as he would never
    see it again.
The court charged that if the force used by McGinty in taking the pocket-book
    from the hands of Swallow was sufficient, under the circumstances, to deprive
    him of his property, and if it was done with a felonious intent to steal it, that
    then the element of violence required by the statute to constitute the offense
    of robbery was made out.
*Held,* that this was error.

WRIT of error to the General Sessions of the county of Essex,
to review the conviction and sentence of the plaintiff in error of
robbery in the first degree.

Upon the trial the complainant, Guy Swallow, testified in sub-
stance that on January 6, 1880, he went into a liquor saloon kept
by Mrs. McGinty, wife of one of the plaintiffs in error; that he
sold the defendant Kinsella a box of catarrh medicine; that Kin-
sella stood behind the bar; that when he paid for the medicine he
(Swallow) took out his pocket-book and put the money in the book;
that McGinty stood at the end of the bar, and knocked the pocket-
book from his hands on to the bar, and that Kinsella picked it up,
and McGinty grabbed him (Swallow) by the shoulders, turned him
around and put him out doors and shut the door; that he demanded
his pocket-book, and McGinty told him he had better go away, he
would never see that pocket-book again; that there were four dol-
lars and eighty cents in silver in the book; that he gave thirty
cents for the book, and that the money and wallet were his; that
the defendants and Mrs. McGinty were in the bar room.

*M. D. Grover*, for the plaintiffs in error.

*R. C. Kellogg*, district attorney, for the People.

LEARNED, P. J.:

The court charged: " If you come to the conclusion that the force which was used in taking this pocket-book from the hand of Guy Swallow was sufficient under the circumstances to deprive him of his property, and if you find that the intent was felonious to steal the property, then I charge you, as a matter of law, that within that element of the statute the charge is made out." The prisoner excepted.

Again, the court charged that the taking by violence means a taking by force which is sufficient to take the property against the owner's will.

Again, the prisoner requested the court to charge that the striking of the pocket-book from the hand of the complainant, as testified to by him, does not constitute robbery. The court refused and charged that if the jury believed his testimony, that makes out the element of robbery. The prisoner excepted.

The testimony of the complainant was that he went into a saloon kept by Mrs. McGinty; that she and the prisoner, McGinty and Kinsella were present and no one else; that he took out his pocket-book; that McGinty knocked it out of his hands upon the bar; that Kinsella picked it up; that McGinty grabbed the complainant and put him out of doors; that he demanded his pocket-book and McGinty told him he would better go away, he would never see the pocket-book again.

The point is whether the court properly submitted the question of violence to the person to the jury. Even if we assume that the forcible turning of the complainant out of doors might be properly considered as characterizing the act of the prisoner, the question still remains whether the court adopted the proper rule as to what constituted violence to the person. The court charged, that if the force which was used was sufficient to deprive complainant of his property against his will, that would be sufficient to constitute the violence to the person, which is a necessary element of the crime. Here we think that the court erred. The language used would

include any larceny from the person. The pickpocket who steals a handkerchief uses sufficient force to deprive the owner of his property, and his taking is felonious and is against the owner's will.

" The mere snatching of anything from the hand of a person without any struggle or resistance by the owner, or any force or violence on the part of the thief, will not constitute robbery." (*McCloskey* v. *People*, 5 Parker, 299; to the same effect *People* v. *Hall*, 6 Parker, 642.)

The violence contemplated means more than simple assault and battery. " It must be sufficient to force the person to part with his property, not only against his will *but in spite of his resistance.*" (*McCloskey* v. *People, ut supra.*)

Now, the present case was only like the snatching of a pocket-book. The complainant was not struck or held, nor was any resistance overcome on his part. The pocket-book was only knocked from his hands, just as it might have been snatched away from them.

The court below drew this distinction, that if the *violence* was only the *result* of the taking, then the crime was not robbery; but if the *taking* was the *result* of the violence, then it was robbery. There is perhaps some force in this distinction if it were properly qualified. But we think that the error was in holding that any physical act to the person of the complainant which resulted in the taking was violence within the meaning of the statute.

It is not easy, nor perhaps is it best, to attempt to make an exhaustive definition of violence as used in the statute; but we may say that it generally implies the overcoming, or attempting to overcome, an actual resistance, or the preventing such resistance through fear. It may include restraint of the person, as in *Mahoney* v. *People* (3 Hun, 202), where the complainant was held around his neck and by his arms. And it generally implies that the acts tend to produce terror and alarm in the person on whom the violence is committed. And it ought not to be held that every assault and battery, even the most trivial, which results in the taking of property from the assaulted person, constitutes that element of violence which is mentioned in the statute. The penalty is severe; the crime aimed at is grave; and we should be careful not to magnify a less offense into one which has, and deserves so severe a punishment. In my

own opinion, the facts of the present case are not sufficient to show the defendant to be guilty of this crime.

The judgment and conviction must be reversed, and the cause remitted to the Court of Sessions.

BOARDMAN, J.:

I concur in the conclusion of the presiding justice that the charge of the judge was erroneous and was likely to mislead the jury. As this will lead to a new trial, I desire to add that the seizure of complainant, in connection with getting his pocket-book and forcibly putting him out of the house, may by possibility, upon a new trial, furnish that element of force, overcoming resistance or inspiring fear, which is necessary in robbery. In this respect I think our decision should not be deemed to be conclusive of the case, or to require the discharge of the plaintiff in error from the indictment.

BOCKES, J.:

I concur in the opinion of my brother LEARNED as regards the error in the charge of the court on the trial. I am also of the opinion that the facts proved do not make out a case of robbery under the statute on which the indictment is found.

The cases cited in 5th and 6th Parker show, as I think, very clearly the insufficiency of the proof to establish the crime charged, as regards violence to the person.

Judgment and order reversed and cause remitted to Essex County Sessions, new trial granted.